**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 13-21854 |
| Daniel Cheifetz, | ) | |
| | ) | Hon. A. Benjamin Goldgar |
| Debtor. | ) | |
| | ) | **Date: November 9, 2016** |
| | ) | **Time: 9:30 a.m.** |

**NOTICE OF TRUSTEE'S MOTION FOR ORDER (I) APPROVING SETTLEMENT AGREEMENT WITH (A) THE DEBTOR, (B) THE ARIELLA REINVESTMENT TRUST, AN ILLINOIS CHARITABLE REMAINDER TRUST, AND (C) HAMILTON CHEIFETZ, AND (II) SHORTENING AND LIMITING NOTICE**

PLEASE TAKE NOTICE that on **Wednesday**, **November 9, 2016**, at **9:30 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable A. Benjamin Goldgar, or any judge sitting in his stead, in Courtroom 642, in the United States Bankruptcy Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois, and present the **Trustee's Motion for Entry of an Order (i) Approving Settlement Agreement With (A) the Debtor, (B) the Ariella Reinvestment Trust, An Illinois Charitable Remainder Trust and (C) Hamilton Cheifetz, and (ii) Shortening and Limiting Notice,** at which time and place you may appear as you see fit.

Dated: October 28, 2016

**JOSEPH E. COHEN, not individually, but solely in his capacity as the Chapter 7 Trustee for the Bankruptcy Estate of Daniel Cheifetz,**

*By: /s/ N. Neville Reid*
One of his attorneys

N. Neville Reid (ARDC #6195837)
Ryan T. Schultz (ARDC #6288585)
**FOX, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, IL 60606
Ph: 312.224.1200
Fx: 312.224.1201

*Special Litigation Counsel to Chapter 7 Trustee, Joseph E. Cohen*

## CERTIFICATE OF SERVICE

I, N. Neville Reid, certify that on October 28, 2016 I caused a copy of the foregoing **Trustee's Motion for Entry of an Order (i) Approving Settlement Agreement With (A) the Debtor, (B) the Ariella Reinvestment Trust, An Illinois Charitable Remainder Trust and (C) Hamilton Cheifetz, and (ii) Shortening and Limiting Notice,** to be filed electronically and to be served upon all parties listed on the attached Service List electronically through the Court's ECF filing system or email or via first-class postage-prepaid mail, as indicated.

*/s/ N. Neville Reid*
N. Neville Reid

## SERVICE LIST

**Parties to receive notice electronically via CM/ECF:**

David P. Leibowitz, Esq. on behalf of Debtor Daniel Cheifetz
dleibowitz@lakelaw.com

Joseph E. Cohen, Trustee
jcohen@cohenandkrol.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Jeffrey M. Schwartz
Counsel to the Trust
jschwartz@muchshelist.com

**Party to receive notice via U.S. Mail:**

Ariella Reinvestment Trust
c/o Daniel Cheifetz, Trustee
1338 Warrington Rd.
Deerfield, IL 60015

Ariella Reinvestment Trust
c/o Jeffrey M. Schwartz
Much Shelist, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606

Hamilton Cheifetz
c/o Joseph Baldi

Baldi Berg, Ltd
20 N. Clark Street, Suite 200
Chicago, IL 60602

Midwest Op. Engineers Pens. Fund
c/o Patrick Ryan
200 W Adams Street, Suite 2200
Chicago, IL 60606

Monty Titling Trust 1
Chapman and Cutler LLP
c/o Bryan Jacobson Capital Crossing
111 West Monroe Street
Chicago IL 60654

Tate Schneider
11950 Blue Bayou Drive
Huntley, IL 60142

IUOE Local 150 Building Corp.
6200 Joliet Road
Countryside, IL 60525

Katherine Cheifetz
710 SE Adams Ct.
Port St. Lucie, Florida 34984

Enterprise Development Foundation
c/o Cheifetz
1338 Warrington Road
Deerfield, IL 60015

Illinois Attorney General
Charitable Trust and Solicitation Bureau
100 W. Randolph Street
3rd Floor
Chicago, IL 60601

Office of the Illinois Attorney General
Atrium at the Thompson Center
100 W. Randolph St.
Chicago, IL 60601

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
230 South Dearborn
Chicago, IL 60604

Illinois Department of Revenue
Bankruptcy Section
P.O. Box 64338
Chicago, IL 60664-0338

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 13-21854 |
| Daniel Cheifetz, | ) | |
| | ) | Hon. A. Benjamin Goldgar |
| Debtor. | ) | |
| | ) | **Date: November 9, 2016** |
| | ) | **Time: 9:30 a.m.** |

**MOTION OF THE TRUSTEE FOR ORDER (I) APPROVING SETTLEMENT AGREEMENT WITH (A) THE DEBTOR, (B) THE ARIELLA REINVESTMENT TRUST, AN ILLINOIS CHARITABLE REMAINDER TRUST, AND (C) HAMILTON CHEIFETZ, AND (II) SHORTENING AND LIMITING NOTICE**

Joseph E. Cohen, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Daniel Cheifetz (the "Debtor"), through his undersigned special counsel, hereby moves (the "Motion") this Court for entry of an order of the Court approving the settlement among the Trustee, the Ariella Reinvestment Trust (the "CRUT"), the Debtor (individually and as trustee of the CRUT), and Hamilton Cheifetz ("Hamilton"), and to shorten and limit notice, pursuant to Sections 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002(h), 9006 and 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Motion, the Trustee states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**SETTLEMENT SUMMARY AND RELIEF REQUESTED**

2. The CRUT and Hamilton are the current co-owners of a cello described as a Mateo Goffriller, circa. 1704, which formerly had been part of the collection of the Curtis Institute of

Philadelphia, a well-known rare instrument collection (the "Cello") — CRUT (84.4%) and Hamilton (15.6%). The Trustee asserts (and the CRUT, CRUT Trustee and Hamilton dispute) that: (a) the Cello and any other CRUT Assets (defined below) are all property of the Estate by virtue of the fact that the CRUT is a self-settled trust; and (b) the Trustee may act as the trustee of the CRUT in the shoes of the Debtor (the CRUT's trustee) and liquidate the CRUT Assets. In the alternative, the Trustee asserts that, at a minimum, the Debtor's right (under the CRUT Agreement as defined below) to annual income of 7.61% of the value of the CRUT Assets until the death of the Debtor is property of the Estate.

3. While the Debtor, the CRUT and Hamilton dispute these assertions, the parties have agreed to sell the Cello and distribute the proceeds according to a settlement agreement and the provisions of the CRUT. Through brokers, the CRUT Trustee and Hamilton have identified a buyer for the Cello willing to purchase it for $1.13 million (the "Purchase Price" and such proposed sale the "Sale"). The parties have agreed to the Sale, the Purchase Price and a distribution of the Debtor's interest in the CRUT to the Trustee described hereinbelow.

4. By this Motion, the Trustee is requesting authority to enter into and perform a settlement agreement (the "Settlement Agreement" and the settlement terms therein the "Settlement") among the Trustee, the Debtor (individually and as Trustee of the CRUT), the CRUT and Hamilton. A copy of the Settlement Agreement is attached hereto as **Exhibit 1**.

5. In summary, the Settlement Agreement provides that:

a. The proceeds of the Purchase Price (the "Proceeds") shall be applied:

i. first, to pay the broker sales commissions in the amount of $230,000[1];

---

[1] Michael Reynolds and Robert Dumitrescu will be sharing the commission. Neither has any relation to the Debtor, the Estate, the Trustee or the CRUT.

ii. second, to pay Hamilton an amount equal to 15.6% of the remaining proceeds on account of his ownership interest;

iii. third, to pay the CRUT's outstanding attorneys' fees and costs (capped at $43,000), accountants' fees and costs (capped at $11,000) and wind-down fees and costs (capped at $12,500); and

iv. fourth, to pay the Estate an amount equal to 100% of the remaining proceeds from the Sale in the CRUT, which amount the CRUT owes to the Debtor. Upon the Trustee's receipt of such proceeds, the proceeds will become the exclusive property of the Estate, free and clear of any and all adverse claims, except they may be used to pay administrative expenses and creditor claims filed against the Estate.

b. The parties will all mutually release each other, except for a carve out requiring the Debtor to perform any remaining duties under the Bankruptcy Code and protecting the right of the Trustee to complete the liquidation of any assets other than the Cello or with respect to the CRUT. Furthermore, the release will explicitly not preclude the (i) Trustee from asserting that the Cello is property of the Estate for any other purposes or disputes as necessary to administer or protect the Estate and its share of the Proceeds, within the sole discretion of the Trustee, or (ii) CRUT or the CRUT Trustee from disputing any such assertions by the Trustee.

6. The Trustee expects to receive approximately $700,000 in gross proceeds from the Settlement. As more fully explained below, in light of all factors courts typically use to analyze settlements – including a general cost/benefit analysis of initiating and prosecuting litigation, the

risks posed by further delay in resolving the dispute, the likelihood of the Trustee's success on the merits, and the general best interests of creditors – the Settlement Agreement should be approved.

## RELEVANT FACTUAL BACKGROUND

### A. The CRUT

7. On or about February 9, 1999, the CRUT was created by the Debtor pursuant to a trust document entitled Ariella Reinvestment Trust (sometimes herein referred to as the "Trust Agreement" or the "CRUT Agreement"). The CRUT was established as an Illinois Charitable Remainder Unitrust. Under the Trust Agreement, the CRUT is required to distribute annually to the Debtor 7.61% of the net fair market value of the CRUT's assets (the "Unitrust Payment") to the extent such net income is sufficient. Upon the Debtor's death, the Trust Agreement requires that the Unitrust Payment be made to the Debtor's ex-wife, Katherine Cheifetz, if she is then still living, and upon her death to the CRUT's current designated charitable beneficiary, the Enterprise Development Foundation.

8. Based on information provided by the Debtor: At some time after the creation of the CRUT, the Debtor contributed various property to the CRUT, including the Cello. The Debtor periodically loaned certain amounts to the CRUT (the "Loans"). Because there was insufficient income in the CRUT, the CRUT could not make the Unitrust Payments. According to the Illinois Charitable Organization Annual Report (form AG 990-IL) filed by the CRUT for the year ending December 31, 2015, as of December 2015, the amount owed to the Debtor for the Loans and the Unitrust Payments (collectively, the "Accrued Unitrust Amounts") is $1,002,318.

9. Hamilton is the brother of the Debtor and a professional cellist. Prior to this bankruptcy and pursuant to a lease arrangement dated October 28, 2000, Hamilton leased the Cello from the CRUT for use in his profession. Additionally, on or about December 12, 2012, Hamilton

purchased a 15.6% interest in the Cello for $153,000. Hamilton asserts a right of first refusal to purchase the Cello under the terms of his original lease.

**B. The Debtor's Bankruptcy Case**

10. On May 24, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"). Shortly thereafter, the United States Trustee for the Northern District of Illinois appointed Joseph E. Cohen as the Trustee for the Estate.

11. On or about March 28, 2016, the Debtor filed a motion to compel abandonment of the CRUT assets [Dkt. 30]. The Trustee challenged that motion, and thereafter engaged special counsel (Fox, Swibel, Levin & Carroll LLP) to contest the Debtor's assertion that the assets of the CRUT (the "CRUT Assets") were not property of the estate and were in any event of no value to the Estate. Trustee counsel proceeded to obtain discovery, formally and informally, on the CRUT in preparation of a complaint seeking an order declaring that the Cello and all the other CRUT assets belonged to the Estate because the CRUT is self-settled. Over an extended period of weeks, the Trustee counsel vigorously contested the Debtor's opposition to that position. Eventually, in lieu of further litigation, the Debtor, Hamilton, the CRUT and the Trustee agreed that a sale of the Cello by the CRUT and Hamilton and distribution of proceeds of the sale to the CRUT (for the benefit of the Trustee through the Debtor's beneficial interest therein and other rights as a creditor with respect thereto) and Hamilton would be in their respective best interests.

12. In late September 2016, while the parties were negotiating on how best resolve their disputes, including the potential of selling the Cello, Hamilton was contacted by Michael Reynolds, a cellist in Boston and Professor at Boston University, who indicated there were two potential buyers in Europe with interest in purchasing the Cello. Through Mr. Robert Dumitrescu who resides in St. Gallen, Switzerland and is a co-broker for the Sale with Reynolds, an unnamed

buyer[2] made an offer to purchase the Cello subject to inspection and authentication. The proposed terms of sale were the $1.13 million total purchase price, with $900,000 net to the CRUT after commissions were paid (the "Offer"). Reynolds advised the CRUT and Hamilton that the Offer is the highest and best one for the Cello in the current market based on his professional experience, and recommended they accept it, which they did, subject to finalizing the Settlement Agreement setting forth the distribution of Proceeds.

## BASIS FOR RELIEF

13. The Trustee seeks approval of the Settlement under the well-developed case law interpreting Bankruptcy Rule 9019. Pursuant to Bankruptcy Rule 9019, bankruptcy courts may approve a settlement to the extent it is (1) "fair and equitable," *Protective Comm. for Ind. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 88 S. Ct. 1157, 1163 (1968), and (2) in the best interests of the estate, *In re Quay Corp., Inc.*, 372 B.R. 378, 382 (Bankr. N.D. Ill. 2007); *see also Depoister v. Mary M. Holloway Foundation*, 36 F.3d 582, 586 (7th Cir. 1994), *In re American Reserve Corp.*, 841 F.2d 159, 161 (7th Cir. 1987); *In re Comm'l Loan Corp.*, 316 B.R. 690, 697 (Bankr. N.D. Ill. 2004). Rule 9019(a) commits the approval or rejection of a settlement to the sound discretion of the bankruptcy court. *In re Michael*, 183 B.R. 230, 232 (Bankr. D. Mont. 1995).

14. In determining whether the Settlement is "fair and equitable," two principles should guide this Court. First, "[c]ompromises are favored in bankruptcy," 10 Lawrence P. King, *Collier on Bankruptcy,* ¶ 9019.0 1, at 9019-2 (15th ed. rev. 1997) (*citing In re Sassalos,* 160 B.R. 646, 653 (D. Ore. 1993)), and are "a normal part of the reorganization process." *Anderson,* 390 U.S. at 424, 88 S. Ct. at 1163 (*quoting Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130,

[2] The buyer is not related in any way to the Debtor, the Trust or Hamilton. This is a true arms-length transaction.

60 S. Ct. 1, 14 (1939)); *see also In re Teknek, LLC*, 402 B.R. 257, 260 (Bankr. N.D. Ill. 2009); *Quay*, 372 B.R. at 382.

15. Second, settlements should be approved if they fall above the lowest point on the continuum of reasonableness. "[The] responsibility of the bankruptcy judge. . . is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983). The court should approve settlements that meet a minimal threshold of reasonableness. *In re Artra Group, Inc.*, 300 B.R. 699, 702 (Bankr. N.D. Ill. 2003) ("The settlement need only surpass the lowest point in the range of reasonableness."). Additionally, courts significantly defer to a trustee's business judgment on the wisdom of a settlement. This court has held:

> The court cannot simply rubber stamp the [trustee's] decision [to settle] and must do more than take the trustee's word that the decision is reasonable. At the same time, settlement decisions are judgment calls. They are not scientific, or subject to any rigid mathematical formula, and they cannot be evaluated in balance sheet fashion. Some deference, then, must be given to the trustee's expertise. ***Only if the settlement falls below the lowest point in the range of reasonableness should the trustee's decision be disturbed***.

*Comm'l Loan*, 316 B.R. at 698 (citations and quotations omitted) (emphasis added).

16. In determining the fairness, reasonableness, and adequacy of a settlement, bankruptcy courts typically assess: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expenses, inconvenience, and delay necessarily attending to it; and (4) the paramount interest of the creditors. *Artra*, 300 B.R. at 702 (*citing American Reserve*, 841 F.2d at 161-62). These factors seek to balance the probable benefit and potential cost of pursuing a claim or defense against the

costs of the proposed settlement. *Comm'l Loan*, 316 B.R. at 698. As described in more detail below, the instant Settlement easily satisfies this standard and should therefore be approved.

17. With respect to the CRUT Assets, the Trustee believes that he will be able to prove that either: (a) the CRUT Assets are property of the Estate; or (b) in the alternative, the Trustee is entitled to significant distributions from the CRUT in perpetuity and may control the CRUT as successor to the Debtor's rights thereunder. The CRUT, CRUT Trustee and Hamilton dispute these assertions and believe that the Trustee has no ownership rights to the assets of the Trust and the Trustee cannot exercise the powers of the CRUT Trustee or force Hamilton to sell his interest.

18. While pursuing the CRUT for the full value of the Cello (less Hamilton's share) could potentially result in greater net recovery to the Estate, the Trustee believes the Settlement is in the best interests of the Estate for the following reasons: First, Hamilton alleges that his lease with the CRUT also provides him with a right of first refusal to purchase the Cello for approximately $660,000. Based on current information, the Trustee believes that Hamilton has a legal basis to establish a right of first refusal. The Settlement, pursuant to which Hamilton is waiving his right of first refusal, provides the Estate with significantly greater recovery than it would receive if Hamilton succeeds on this issue at litigation (approx. $50-$100K more). Second, other than the transaction costs incurred by the CRUT in consummating the Sale and winding down its affairs, the Estate is receiving all of the Proceeds it would be entitled to receive if it were declared the owner of the Cello. Litigating over the ownership of the Cello in order to save the Estate these costs would not make any economic sense and would needlessly delay the Trustee's receipt of such proceeds. Moreover, such litigation would likely cause the CRUT and Hamilton to pull their support of the pending Sale, which would mean potentially losing a ready, willing and able buyer who is prepared to purchase the Cello at a very favorable price. Third, the Purchase Price is well within 7% of the appraised value for the Cello based on the CRUT's records provided

to the Trustee. The CRUT has indicated to the Trustee that if the settlement is approved, the CRUT would wind down as there are no additional assets.

19. Put simply, the Trustee believes the approximately $700,000 in gross proceeds he expects to receive from the Sale fairly represents what the Trustee could obtain after a trial and collection efforts, but without the litigation cost, risk or delay.

**NOTICE**

The Trustee has provided twelve (12) days' notice of this Motion to (a) the Office of the United States Trustee; (b) the Illinois Attorney General; (c) Katherine Cheifetz; (d) the Enterprise Development Foundation; (e) counsel for the Debtor and the other settlement parties; (f) all persons who filed a proof of claim in this case; (g) all parties set up to receive notice through the Court's ECF Filing System; and (h) all other persons who have requested notice pursuant to Bankruptcy Rule 2002. In this case, shortened and limited notice is warranted, for at least two reasons.

First, with respect to shortened notice, pursuant to Bankruptcy Rule 9006(c) the Court may shorten the required notice period for cause. In this case, cause exists because there is a very favorable pending sale, but such sale is very time sensitive. Moreover, the CRUT and Hamilton will not agree to complete the Sale absent a court order approving the Settlement Agreement. As a result, under the circumstances, the Trustee asserts that twelve days' notice is sufficient.

Second, with respect to limiting notice, while Rule 2002 requires notice to all creditors of motions to approve settlement, Rule 2002(h) authorizes the court to limit creditor notice to those entities which actually filed a proof of claim in the case. In order to reduce costs and increase the potential dividend to creditors, the Trustee requests that the court limit creditor notice of this Motion to creditors that actually filed proofs of claim in the case. No prejudice will result to other creditors who did not file a claim, as they had notice of the bar date herein and apparently already elected not to participate in distributions in the case.

**WHEREFORE**, the Trustee requests that this Court enter an order substantially in the form attached hereto, (i) authorizing the Trustee to consummate the Settlement Agreement; and (ii) approving the Settlement Agreement and the notice of this Motion.

Dated: October 28, 2016

**JOSEPH E. COHEN, not individually, but solely in his capacity as the Chapter 7 Trustee for the Bankruptcy Estate of Daniel Cheifetz,**

*By: /s/ N. Neville Reid*
One of his attorneys

N. Neville Reid (ARDC #6195837)
Ryan T. Schultz (ARDC #6288585)
**FOX, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, IL 60606
Ph: 312.224.1200
Fx: 312.224.1201

*Special Litigation Counsel to Chapter 7 Trustee, Joseph E. Cohen*

# EXHIBIT 1

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of October __, 2016, by and between Joseph E. Cohen, not personally, but as Chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Daniel Cheifetz (the "Debtor"), and Hamilton Cheifetz ("Hamilton"), the Ariella Reinvestment Trust (the "CRUT"), Daniel Cheifetz in his capacity as Trustee for the CRUT (the "CRUT Trustee") and Daniel Cheifetz in his individual capacity as the Debtor. The Trustee, Hamilton, the CRUT, the CRUT Trustee and the Debtor are referred to in this Agreement, collectively, as the "Parties" and, each individually, as a "Party."

## RECITALS

WHEREAS, on or about February 9, 1999, the Debtor established the CRUT pursuant to the terms of that certain Ariella Reinvestment Trust (the "Trust Agreement" or the "CRUT Agreement");

WHEREAS, currently the sole asset of the CRUT is a Mateo Goffriller Cello, circa. 1704, which formerly had been part of the collection of the Curtis Institute of Philadelphia, a well-known rare instrument collection, which Cello the CRUT purchased in 1999 for $777,000 (the "Cello");

WHEREAS, on October 28, 2000, the CRUT entered into an agreement with Hamilton regarding the use of the Cello;

WHEREAS, Hamilton asserts his agreement with the CRUT includes a right of first refusal to purchase the Cello (the "Hamilton ROFR");

WHEREAS, on November 14, 2012, the CRUT sold Hamilton a 15.6 percent interest (the "Hamilton Fractional Interest") in the Cello for $153,000 (the "Hamilton Share Purchase Price");

WHEREAS, on May 24, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"), Case No. 13-21854 (the "Bankruptcy Case"). Shortly thereafter, the United States Trustee for the Northern District of Illinois appointed Joseph E. Cohen as the Trustee for the Estate;

WHEREAS, the CRUT Trustee and Hamilton have located a purchaser for the Cello (the "Purchaser") and wish to sell their respective interests in the Cello for an aggregate gross purchase price of One Million One Hundred Thirty Thousand dollars ($1,130,000) (the "Sale Price" and such proposed sale the "Sale"). After payment of the commission related to the Sale (the "Commission"), the CRUT and Hamilton will collectively receive Nine Hundred Thousand Dollars ($900,000) (the "Sale Proceeds");

WHEREAS, the Parties agree that the Sale Price and amount of Sale Proceeds are reasonable and that the Sale Price represents the fair market value of the Cello;

WHEREAS, prior to the Sale, the Parties wish to resolve various disputes among them, including (i) ownership alleged by the Trustee against the CRUT related to the Cello, and (ii) the distribution of the Sale Proceeds; and,

WHEREAS, in their mutual desire to avoid uncertainties and continued expense of litigation, the Parties have agreed to settle and compromise the disputes between the Parties on the terms set forth herein;

NOW THEREFORE, in consideration of the mutual covenants and conditions contained herein, the receipt and sufficiency of which the Parties hereby acknowledge, and intending to be legally bound thereby, the Parties hereby covenant and agree as follows:

## AGREEMENT

1. **Recitals Incorporated.** The recitals and prefatory phrases and paragraphs set forth above are incorporated in full in, and made a part of, this Agreement.

2. **Trustee Consent to Sale; Sale Proceeds Escrow.** The Trustee consents and agrees that the sale of the Cello, the Sale Price and the amount of the Sale Proceeds to be received by Hamilton and the CRUT are fair and reasonable. The Trustee shall use his best efforts to obtain an order of the Bankruptcy Court approving this Agreement, as soon as practicable. Upon the closing of the Sale, the CRUT and the Debtor shall cause the Sale Proceeds therefrom to be immediately deposited into a designated account maintained by the Trustee in escrow for the sole benefit of the CRUT, the Trustee and Hamilton (the Trustee, in such escrow agent capacity, the "Escrow Agent" and such account the "Escrow"), according to an escrow agreement or instructions acceptable to the Trustee, the CRUT and Hamilton consistent with Paragraph 3 and the other provisions hereof. The funds deposited into the Escrow shall be owned 84.4% by the CRUT and 15.6% by Hamilton and shall be distributed out of the Escrow in accordance with Paragraph 3 hereof.

3. **Distribution of Proceeds**. The Sale Proceeds from the sale of the Cello shall be disbursed from the Escrow by the Escrow Agent on the Effective Date (except as otherwise stated) as follows:

- First, 15.6 percent of the Sale Proceeds ($140,400) shall be disbursed to Hamilton by check via overnight mail in accordance with Hamilton's instructions to the Escrow Agent (the "Hamilton Share of Proceeds").

- Then, from the remaining Sale Proceeds, the Escrow Agent shall disburse to the CRUT the following amounts for the purposes indicated:

    - To payment of the CRUT's outstanding expenses (collectively, the "CRUT Expenses"), not to exceed $54,000 in the aggregate (the "Expense Cap"), including payment of the CRUT's attorney fees (Much Shelist) not to exceed $43,000 (the "Much Shelist Fee Cap") and accounting fees (Bronswick Reicin Pollack, Ltd.) not to exceed $11,000 (collectively with the Much Shelist Fee Cap, the "Fee Caps"). Much Shelist and Bronswick Reicin Pollack, Ltd. (collectively, the "CRUT Professionals") shall

provide the Escrow Agent with their respective invoices for their services to the CRUT (the "Invoices"), on or before the Effective Date. Solely upon receipt of such Invoices, the Escrow Agent shall disburse the respective CRUT Professionals the amounts owed them according to such Invoices, by check according to their respective instructions, subject to the Fee Caps. Except as otherwise expressly provided herein or as otherwise expressly agreed by the Trustee in writing, no amount of the Sale Proceeds shall be used to pay any CRUT Expenses in excess of the Expense Cap or the Fee Caps.

- o Then, the Escrow Agent shall remit to the CRUT the sum of $12,500 (the "Wind Down Funds") for it to pay fees and expense necessary to wind down the CRUT, including the filing of final tax returns (with no payments to be made to the Debtor for his services as trustee of the CRUT). Neither the Trustee or the Debtor's estate will have any interest or right to all or a portion of the Wind Down Funds or the funds currently in the CRUT bank account (which are less than $500) except to the extent the CRUT does not expend the full amount of the Wind Down Funds, in which case, any remaining funds (including in any such Trust bank account) shall be distributed to the Trustee as provided in this Agreement.

- o Then, the Escrow Agent shall remit, on behalf of the CRUT, the remainder of the Sale Proceeds (the "Trustee Share of Proceeds") to the Trustee, on account of (i) past due loans owed to the Debtor by the CRUT (the "Loans") and (ii) "unitrust amounts" (as defined in the CRUT Agreement; the "Accrued Unitrust Amounts") owed to the Debtor under the CRUT, or otherwise on account of the Debtor's or the Trustee's beneficial interest in or rights with respect to the CRUT under applicable law or the Trust Agreement.

- In the event the CRUT does not expend the full amount of the Wind Down Funds, the CRUT shall distribute any such remaining Wind Down Funds to the Trustee on account of the Loans and the Accrued Unitrust Amounts or pursuant to such other rights as the Trustee or the Debtor may have to receive distributions from the CRUT under the Trust Agreement or applicable law.

- In connection with the preparation of the CRUT tax return(s), the accountant for the CRUT shall prepare any appropriate Schedule K-1s required under the Internal Revenue Code and regulations thereto in connection with the distribution of any Loan repayments or unitrust amounts, to be sent to the appropriate recipient(s) by the CRUT Trustee or accountant.

4. **Effective Date**. This Agreement shall become effective on the first Business Day (the "Effective Date") following the date that: (i) this Agreement is signed by all Parties to the Agreement; (ii) the CRUT has received the Sale Proceeds and deposited them into the Escrow; and (iii) the Bankruptcy Court has entered an order approving this Agreement in the form substantially similar to the draft order attached hereto as Exhibit A or as otherwise approved by

all of the Parties (the "Approval Order"). If the Bankruptcy Court does not approve this Agreement or the Sale Proceeds are not received by the CRUT, this Agreement shall become null and void and of no further effect. For purposes hereof, the term "Business Day" shall mean any day of the week other than a Saturday, Sunday or a day on which federal banks are closed.

5. **Release of the Trustee**. With the exception of any action to enforce the terms of this Agreement (including any material breach of any representations or warranties herein), and effective solely upon the Trustee receiving the Trustee Share of Proceeds (net of the Wind Down Funds) and Hamilton receiving the Hamilton Share of Proceeds, the CRUT, the CRUT Trustee, the Debtor and Hamilton and their respective heirs, successors and assigns hereby release, acquit, exonerate and forever discharge the Estate and the Trustee and his agents, attorneys, representatives, successors and assigns from any and all claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorneys' fees and losses whatsoever, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, foreign law, common law or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued relating in any way to the CRUT, the Cello, the Estate and the Bankruptcy Case. The releases herein specifically include a waiver and release by Hamilton of the Hamilton ROFR. Notwithstanding the above, nothing herein shall release any rights or claims that the CRUT or CRUT Trustee may have to contest any other liability or claim of any person or entity (other than the Trustee, the Debtor or Hamilton enforcing their rights hereunder) seeking to recover any funds from, or assert any claim against, the CRUT or the CRUT Trustee.

6. **Release by the Trustee**. With the exception of any action to enforce the terms of this Agreement (including any material breach of any representations or warranties herein) and effective solely upon occurrence of the Trustee receiving the Trustee Share of Proceeds (net of the Wind Down Funds) and Hamilton receiving the Hamilton Share of Proceeds, the Trustee, on behalf of himself and the Estate, hereby does release, acquit, exonerate and forever discharge Hamilton, the CRUT, the CRUT Trustee and the Debtor and each of their respective agents, attorneys, representatives, trustees, successors and assigns from any and all claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorneys' fees and losses whatsoever, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, foreign law, common law or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued relating in any way to the CRUT, the Cello, the Estate or the Bankruptcy Case, except that neither the foregoing nor any other provision herein shall be construed to release (i) the Debtor, in his individual capacity, from his duties or obligations under the Bankruptcy Code, (ii) any claims arising from any failure of the Debtor to disclose to the Trustee any asset or property of the Debtor that is property of the Debtor's Estate, other than claims relating to the Cello and the CRUT which are being settled herein, and (iii) the rights of the Trustee to (a) pursue or collect any property of the Estate or any asset as to which the Trustee may assert a right or interest, other than the Cello and the CRUT, whether previously disclosed or undisclosed by the Debtor, pursuant to his duties under the Bankruptcy Code, or (b) contest any other liability or claim of any person or entity seeking to recover any funds from, or assert any claim against, the Estate.

7. **Release by and Between Hamilton and CRUT**. With the exception of any action to enforce the terms of this Agreement (including any material breach of any representations or warranties herein), effective solely upon occurrence of the Trustee receiving the Trustee Share of Proceeds (net of the Wind Down Funds) and Hamilton receiving the Hamilton Share of Proceeds, Hamilton and the CRUT shall and hereby do release, acquit, exonerate and forever discharge each other, and each of their respective agents, attorneys, representatives, trustees, successors and assigns from any and all claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorneys' fees and losses whatsoever, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, foreign law, common law or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued relating in any way to the CRUT, the Cello, the Estate and the Bankruptcy Case. The releases herein specifically include a waiver and release by Hamilton of the Hamilton ROFR.

8. **Representations and Warranties**.

a) Each of the Parties represents and warrants that they have not assigned, hypothecated, or otherwise transferred any claims or claims that any of them have or could have had, released in Paragraph 5, 6 and 7 above.

b) The Parties represent and warrant that (i) they have read this Agreement, understand its contents, and are thoroughly familiar with the implications of this Agreement in all respects; (ii) each Party is entering into this Agreement freely and voluntarily and has been represented by legal counsel in the negotiation and drafting of this Agreement; and (iii) subject to the Trustee obtaining Bankruptcy Court approval, each of the undersigned has the authority to execute this Agreement on behalf of the party for whom it is executed and to give the releases and make other promises contained herein.

c) The Debtor and the CRUT hereby represent and warrant that based upon the Illinois Charitable Organization Annual Report (Form AG 990- IL) filed by the CRUT for the year ending December 31, 2015, as of December 31, 2015, the amount owed to the Debtor by the CRUT in Loans and Accrued Unitrust Amounts is no less than $1,002,318.

d) The Debtor and the CRUT hereby represent and warrant to the Trustee that the Cello is the sole asset of the CRUT other than (i) the claims settled or released herein subject to the terms hereof and (ii) the amount in the CRUT bank account in an amount less than $500.00.

e) Each of the Debtor and Hamilton represents and warrants to the Trustee and the CRUT that (i) neither will receive any share of the Commission, (ii) he is unaware of, and has not received, any offer for the Cello that is higher or better than the Sale Price and (iii) neither is related to the Purchaser.

f) To the best of the knowledge of the Debtor, individually and as CRUT Trustee, the tax returns for the CRUT (as amended) provided to the Trustee accurately describe all of the assets of the CRUT for the tax years covered by such tax returns. All of the other information provided to the Trustee by the CRUT or the Debtor regarding the CRUT is otherwise true, accurate and complete in all material respects.

9. **Authority**. The Parties acknowledge and agree that the Trustee's authority to enter into this Agreement on behalf of the Estate and the validity of this Agreement, and the Trustee's obligations hereunder, are contingent upon entry of an order by the Bankruptcy Court approving the settlement memorialized herein and authorizing the Trustee's execution of this Agreement on behalf of the Estate.

10. **No Admission of Liability.** This Agreement affects the settlement of claims which are denied and contested, and nothing contained herein shall be construed as an admission by the Parties of any kind. Notwithstanding the generality of the foregoing but subject to the rights of the Trustee, Hamilton, the Debtor and the CRUT and CRUT Trustee to enforce their respective rights hereunder and the provisions hereof, nothing herein shall be construed to release, extinguish, prejudice, limit or modify any defense of the Trustee, the CRUT or the CRUT Trustee against any actual or potential claim or liability that may be asserted against the Estate, the CRUT or the CRUT Trustee for any reason at any time, including but not limited to any defense based on the Trustee's assertion that the Cello is property of the bankruptcy Estate or the CRUT and CRUT Trustee to dispute such claim.

11. **Miscellaneous**.

a) The Parties agree to execute and deliver such other instruments and perform such acts as may be appropriate and reasonably necessary, from time to time, to effectuate this Agreement.

b) Except as expressly set forth herein, this Agreement may not be modified or amended, nor any of its provisions waived, except by an instrument in writing signed by all of the Parties.

c) This Agreement shall inure to the benefit of, and shall be binding on, the heirs, representatives, successors and assigns of the Parties.

d) The headings and section of this Agreement are inserted solely for the convenience of reference and are not a part of or intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

e) To the extent that performance is to be governed by time, time shall be deemed to be of the essence hereof.

f) This Agreement shall be governed by the laws of the State of Illinois, without regard to its choice of law rules. The Parties consent to the jurisdiction of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, with respect to any dispute arising out of, related to, or concerning this Agreement.

g) This Agreement may be executed and delivered in any number of counterparts, each of which, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same Agreement. Any such counterpart, to the extent delivered by means of facsimile or .pdf, .tif, .gif, .jpeg or similar attachment to electronic mail, shall be treated in all manner and respects as an original executed counterpart and shall be considered to have the same binding legal effect as if it were the original signed version delivered in person.

h) The Agreement is the product of negotiations of the Parties, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to the interpretation for or against any Party by reason of that Party having drafted or caused to have drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof. In the event that Hamilton, the Trustee and the CRUT are required to disgorge their respective shares of the Sale Proceeds for any reason, then this Agreement including the releases herein shall be null and void, and the parties will thereupon reserve all of their rights including with respect to the Cello and the CRUT.

**[The Balance of this Page Left Intentionally Blank; Signature Page Follows]**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first written above.

**JOSEPH E COHEN, not individually**
**but as Chapter 7 Trustee for Daniel Cheifetz**

______________________________
**Joseph E. Cohen**

**ARIELLA REINVESTMENT TRUST**

**By:**______________________________
**Its: Trustee**

**DANIEL CHEIFETZ, not individually**
**But as the Trustee of the Ariella Reinvestment Trust**

______________________________

______________________________
**HAMILTON CHEIFETZ, individually**

______________________________
**DANIEL CHEIFETZ, individually**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first written above.

**JOSEPH E COHEN, not individually**
**but as Chapter 7 Trustee for Daniel Cheifetz**

Joseph E. Cohen

**ARIELLA REINVESTMENT TRUST**

**By:__________________________________**
**Its: Trustee**

**DANIEL CHEIFETZ, not individually**
**But as the Trustee of the Ariella Reinvestment Trust**

__________________________________

__________________________________
**HAMILTON CHEIFETZ, individually**

__________________________________
**DANIEL CHEIFETZ, individually**

# EXHIBIT 1

**Form Approval Order**

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 13-21854 |
| Daniel Cheifetz, | ) | |
| | ) | Hon. A. Benjamin Goldgar |
| Debtor. | ) | |
| | ) | |
| | ) | |

**ORDER (I) APPROVING SETTLEMENT AGREEMENT WITH THE DEBTOR, ARIELLA REINVESTMENT TRUST AND HAMILTON CHEIFETZ, AND (II) SHORTENING AND LIMITING NOTICE**

This matter having come to be heard on the Motion (the "Motion") of Joseph E. Cohen, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Daniel Cheifetz (the "Debtor"), for entry of an order of the Court approving the settlement among the Trustee, the Debtor, the Ariella Reinvestment Trust (the "Trust") and Hamilton Cheifetz ("Hamilton") (the "Settlement Agreement" a copy of which is attached hereto as Exhibit A), pursuant to Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 9006 and 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

IT IS HEREBY ORDERED THAT:

1. The Motion is hereby granted in its entirety, and the shortened and limited notice of the Motion as described therein is appropriate under the circumstances and also hereby approved. The Trustee is hereby authorized to execute, deliver and perform the Settlement Agreement as set forth in the Motion and the Settlement Agreement. Without limiting the generality of the foregoing, the Trustee is authorized to execute, deliver or file such documents and undertake such ministerial actions that the Trustee deems necessary to perform the Settlement Agreement. Each and every provision of the Settlement Agreement is hereby approved and authorized and incorporated herein as if expressly stated herein.

2. The Trustee, as the escrow agent under the Settlement Agreement, is hereby authorized and directed to make the distributions described in the Settlement Agreement in accordance with the terms thereof. Upon his receipt of any and all distributions the Trustee is entitled to receive under the terms of the Settlement Agreement (the "Estate Proceeds"), such Estate Proceeds shall become the sole and exclusive property of the Estate, free and clear of any and all claims and interests of all other persons and entities, except that the Estate Proceeds may be used to pay Estate administrative expenses and claims filed by creditors against the Estate, in accordance with the provisions of the Bankruptcy Code and Bankruptcy Rules.

3. This Order shall become effective immediately upon its entry. Nothing in this

Order, the Motion or the Settlement Agreement shall be construed to prejudice, limit, release, deny or estop the right of the Trustee to assert any defense against any (i) liability asserted against the Estate or the Estate Proceeds for any reason, or (ii) claim by any person or entity to the Estate Proceeds, including any defense based on the contention or proposition that the Cello (as defined in the Motion) is property of the Estate.

4. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Enter:

Dated:

United States Bankruptcy Judge

Prepared by:
N. Neville Reid (ARDC #6195837)
Ryan T. Schultz (ARDC #6288585)
FOX, SWIBEL, LEVIN & CARROLL, LLP
200 West Madison Street, Suite 3000
Chicago, IL 60606
Ph: 312.224.1200
Fx: 312.224.1201